John McCarthy
Brian P. Hall
SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700
Fax:  (212) 907-9800

*Proposed counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------

In re

SABON HOLDINGS, LLC, *et al.*1
　　　　　Debtors.

----------------------------------------------------------

Chapter 11

Case No. 20-11320

(Joint Administration Requested)

### DECLARATION OF YALE SCOTT BOGEN PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 IN SUPPORT OF FIRST DAY MOTIONS

YALE SCOTT BOGEN, pursuant to 28 U.S.C. § 1746, declares as follows:

1.　　I am the Chief Restructuring Officer of the within debtors and debtors in possession (collectively, the "Debtors").  I am familiar with the Debtors' day-to-day operations, business affairs, and books and records.  I submit this declaration ("Declaration") pursuant to Rule 1007- 2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules") to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of these chapter 11 cases and in support of (i) the Debtors' petitions for relief under chapter 11 of title 11 of the United States Code (the

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SABON HOLDINGS, LLC (9131), SABON MANAGEMENT, LLC (9205), SABON 78 7TH AVE, LLC (4824), SABON 458 BWY, LLC (5760) ,SABON 782 LEX, LLC (6496), SABON 1276 LEX, LLC (4675), SABON AMERICAN DREAM, LLC (3633), SABON 1371 6TH AVE, LLC (6176), SABON 2052 BWY, LLC (6388), SOAPIA, Inc. (8472), SABON RF, LLC (6097). SABON WEB, LLC (6450), SABON 1450 BWY, LLC (2810) and SABON WILLIAMSBURG, LLC (1159).  The mailing address and principal place of business of the Debtors is 584 Broadway Avenue, Suite 601, New York, NY 10012.

"Bankruptcy Code") filed on May 29, 2020 (the "Petition Date") and continuing thereafter, and (ii) the relief, in the form of motions and applications, that the Debtors have requested of the Court (collectively, the "First Day Pleadings").

2.      The First Day Pleadings seek relief aimed at preserving the value of the Debtors and maintaining the continuity of its operations which are critical to the Debtors' reorganization efforts.   More specifically, the First Day Pleadings seek relief to allow the Debtors to: (i) stabilize and maintain its business operations through, among other things, obtaining post-petition financing; (ii) preserve relationships with the management team, customers, employees and other key constituencies; and (iii) establish certain administrative procedures to facilitate an orderly transition into, and uninterrupted operations throughout, the chapter 11 process.

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with members of the Debtors' senior management and advisors, my review of relevant documents and information concerning the Debtors' operations and financial affairs, or my opinion based upon my experience and knowledge.  If called upon, I would testify to the facts set forth in this Declaration.  I am authorized to submit this Declaration on behalf of the Debtors.

**Nature of the Debtors' Business and Circumstances Leading to Debtors' Filing**

4.      The Debtors are privately owned companies engaged in the business of sale of handmade soaps and related bath and body products manufactured in Israel and have been operating since 2003. As of the date hereof, Debtors operate nine stores, eight of which are located in New York City and one is located in Garden City, New York. The Debtors' stores are operated in a personalized sales manner that allows customers to experience the products first-hand by, among other things, trying the products in the store with assistance of sales personnel.

SGR/22808797.1

The Debtors also sell to customers online.  In recent years, given the change in the consumer habits that weakened the retail market, the Debtors' in-store sales have suffered.

5.      The COVID-19 global pandemic and the ensuing government mandated closures of all of the Debtors' stores have devastated Debtors' revenue through all channels of commerce. Even assuming that the government mandated closures imposed upon Debtors' stores are lifted within the next two or three months, Debtors' revenue streams have irreparably suffered and are unlikely to recover in a manner that would allow the Debtors to meet its obligations to its creditors.

6.      Sabon Holdings, LLC, the 100 percent owner of each other debtor, is a wholly owned subsidiary of Groupe Roche Holdings U.S. ("GRHUS").  GRHUS is the Debtors' largest prepetition creditor and is owed over $10 million under a Treasury Management Agreement, all of which was borrowed by the Debtors on an unsecured basis.  To facilitate the chapter 11 process, GRHUS has agreed to provide debtor in possession financing, on a secured basis, in the maximum amount of $750,000.

7.      Local Bankruptcy Rule 1007-2 requires certain information related to the Debtors, which is set forth below.

**Holders of Unsecured Claims**

8.      In accordance with Local Bankruptcy Rule 1007-2(a)(4), *Schedule 1* hereto is a list of the names, addresses, and, where available, telephone numbers and email addresses of the creditors holding the 20 largest unsecured claims (excluding insiders) against each Debtor.  Such list includes the amount of the claim, the nature of the claim and, if appropriate, an indication of whether such claim is contingent, unliquidated, disputed, or partially secured, subject, however,

SGR/22808797.1

to the reservations of rights stated on *Schedule 1* regarding, among other things, the actual validity of any such claims.

## Holders of 5 Largest Secured Claims

9.      There are no creditors holding secured claims against the Debtors.

## Summary of Debtors' Assets and Liabilities

10.      In accordance with Local Bankruptcy Rule 1007-2(a)(6), the Debtors' assets and liabilities are, as of May 29, 2009:

      a.   Total Assets: approximately $3,300,000;

      b.   Total Liabilities: approximately $12,500,000.

## The Debtors' Business Premises'

11.      In accordance with Local Bankruptcy Rule 1007-2(a)(9), the premises owned, leased, or held under other arrangement, from which the Debtors operate their business is as follows:

| Type | Location | Tenant Entity |
|---|---|---|
| Store | 1371 6th Ave New York, NY 10019 | Soapia Inc. & Sabon 1371 6th, LLC (co-tenants) |
| Store | 78 7th Ave New York, NY 10011 | Sabon Management, LLC |
| Store | 630 Old Country Rd Garden City, NY 11530 | Sabon RF, LLC |
| Store | 458 Broadway New York, NY 10013 | Sabon 458 BWY, LLC |
| Store | 1450 Broadway New York, NY 10018 | Sabon 1450 BWY, LLC |
| Store | 782 Lexington Ave New York, NY 10065 | Sabon 782 Lex, LLC |
| Store | 1276 Lexington Ave New York, NY 10028 | Sabon 1276 Lex, LLC |
| Store | 2052 Broadway New York, NY 10023 | Sabon 2052 Bwy, LLC |

SGR/22808797.1

| Store | 128 N 4th St Brooklyn, NY 11249 | Sabon Williamsburg, LLC |
|---|---|---|
| Office | 584 Broadway, New York New York 10012 | Sabon Management, LLC |

### Location of Debtors' Assets

12.     The Debtors' maintain their books and records at:  584 Broadway, Suite 601, New York, New York 10012.

### Pending Lawsuits

13.     There is no litigation pending against the Debtors.

SGR/22808797.1

**Senior Management**

14.     In accordance with Local Bankruptcy Rule 1007-2(a)(12), the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience is as follows.

a.  Sebastien Guinchard is the Chief Executive Officer of the Debtors.  Mr. Guinchard has worked for the Debtors since July 2019 and is responsible for the day-to-day details and operations of the Debtors.  Mr. Guinchard is a graduate of EDHEC Business School (France) and has previously worked as the US Manager of Jacadi USA, a children's clothing and goods chain. Prior to that, Mr. Guinchard was the vice president of business development for North American operations of L'Occitane en Provence.

b.  Fanny Grouzinoff is the Director of Finance. Ms. Grouzinoff recently joined the Debtors in March 2020 and is responsible for managing the day to day financial operations of the Debtors.  Ms. Grouzinoff is a graduate of Emlyon Business School (France) and was previously the Global Client Finance Manager with the Publicis Groupe, an advertising and a public relations company.

**Additional Information**

15.     The Debtors intend to continue to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

16.     The estimated weekly payroll to employees, excluding severance benefits, for the thirty (30) period following the filing of the chapter 11 petitions is $27,500.

SGR/22808797.1

17.     The amount paid and proposed to be paid for services for the thirty (30) period following the filing of the chapter 11 petition:

      a.   to officers - $21,670;

      b.   to stockholders - $0;

      c.   to directors - $0; and

      d.   to financial or business consultants - $0.

18.     *Schedule 2* is the 13 week cash budget (the "Budget") prepared in preparation of these chapter 11 cases. The Budget contains the information required by Local Rule 1007-2(b)(3).

SGR/22808797.1

## Summary of First Day Pleadings

19.    Concurrently with its Chapter 11 petitions, the Debtors are filing the following First

Day Pleadings:

> a.    *Debtors' Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 1015(b) Directing Joint Administration of Chapter 11 Cases* (the "Joint Administration Motion");
>
> b.    *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Participating in Existing Cash Management System, and Using Bank Accounts and Business Forms, and (B) Continue Intercompany Transactions, (II) Providing Administrative Expense Priority for Postpetition Intercompany Claims, (III) Granting Related Relief* (the "Cash Management Motion");
>
> c.    *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefits Programs, and (II) Granting Related Relief* (the "Wages Motion");
>
> d.    *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Continue Customer Programs in the Ordinary Course of Business, (II) Pay Prepetition Obligations Related Thereto, and (III) Granting Related Relief* ("Customer Program Motion");
>
> e.    *Motion of Debtors for Entry of an Order for Rejection of Unexpired Leases of Nonresidential Real Property (*the "Lease Rejection Motion")*; and*
>
> f.    *Motion of Debtors for Entry of Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, and (III) Modifying the Automatic  Stay (*the "DIP Financing Motion")*.

20.    I have reviewed each of the First Day Pleadings and participated in their preparation,

and I believe the Debtors would suffer immediate and irreparable harm absent the ability to continue

their business operations as contemplated by the relief requested in the First Day Pleadings. In my

opinion, the grant of the relief sought in the First Day Pleadings will be critical to the Debtors' efforts

SGR/22808797.1

to monetize the value of their assets in bankruptcy in a manner that preserves and maximizes value for the benefit of all parties.

21.     Below is a brief discussion of the First Day Pleadings and an explanation of why, in my belief, such motions are critical to the successful prosecution of these Chapter 11 Cases..

Cash Management Motion

22.     Pursuant to the Cash Management Motion, the Debtors seek to maintain its current cash management system and keep open its existing bank accounts, allow intercompany transactions to continue and keep using their existing business forms.

23.     The Debtors require the ability to continue to maintain various bank accounts which the Debtors use for disbursements for trade suppliers, utilities, sales tax remittances, and other creditors, all as more fully described on **Exhibit A** to the Cash Management Motion (collectively, the "Accounts").  Maintaining the Accounts will assist the Debtors to continue the uninterrupted operation of the Debtors' businesses and manage cash in a prudent fashion. Therefore, unless the relief requested is granted, the Debtors may be deprived of the opportunity to reorganize.

24.     The Debtors utilize the Accounts in the ordinary and usual course of their businesses.  Under the circumstances, maintenance of the Accounts with minimal disruption is essential to the successful reorganization of the Debtors and is also in the best interests of all parties in interest.  The Debtors will continue to maintain strict records with respect to all transfers of cash so that it may readily account for all transfers.

25.     Furthermore, the cash management system utilized by the Debtors is familiar to the Debtors, the banks at which they maintain accounts and their suppliers and employees.  As part of their daily operations, the Debtors collect cash, checks, wire transfers, automated clearing house ("ACH") transfers, and credit and debit card payments from customers.  Each of the

Debtors has an Account and receives funds generated by or on account of that Debtor's operations from third parties and via intercompany transfers. The Debtors can achieve the goals of the Operating Guidelines without closing their existing accounts and opening new ones.

26.     The Debtors will identify all prepetition checks and other forms of payment outstanding on the Petition Date and notify the banks holding the Accounts not to pay such checks or obligations.

27.     Requiring the Debtors to close all Accounts and open new debtor-in-possession accounts would (i) be costly; (ii) disrupt the Debtors' ability to satisfy postpetition payables in a timely manner, potentially causing a loss of trade credit and customer confidence; (iii) interfere with the efficient management of the Debtors' cash resources; and (iv) distract the Debtors' managers at a time when the business requires their full attention.

28.     Substantial disruptions and delays in payments to the Debtors' creditors for post-petition obligations could occur if the Debtors are prohibited from continuing to use the Accounts.  A majority of the Debtors' revenues are derived from credit card and debit card sales and closing the Accounts will disrupt and delay the receipt of payments from its credit card processors. To avoid such problems and to ensure as smooth a transition into Chapter 11 as possible, with a minimal disruption to ongoing financial and administrative operations, it is imperative that the Debtors be permitted to continue using the Accounts.

29.     Additionally, there are 14 debtors, each with its own bank accounts and checks. If the Debtors are required to establish new accounts and obtain new checks for each account, the cost of doing so would likely outweigh the benefit achieved.  The Debtors maintain sufficient accounting controls to trace the funds that are transferred.  Requiring the Debtors to open new

SGR/22808797.1

accounts would drastically slow down the administration of the bankruptcy cases and would be unduly burdensome.

30.     I not that all of the Accounts are maintained at Capital One, N.A. and HSBC Bank USA, N.A., each an Authorized Depository, as promulgated by the United States Trustee's Guidelines.

31.     Regarding the continued use of checks and other business forms including purchase orders and invoices (collectively, the "Business Forms"), by virtue of the nature and scope of the business in which the Debtors are engaged, and the numerous parties with whom the Debtors deal, it is imperative that the Debtors be permitted to continue to use the Business Forms without alteration or change.

32.     Based on my experience, the foregoing cash management system constitutes ordinary, usual and essential business practices and any disruption in these practices and procedures would jeopardize the Debtors' efforts towards a successful Chapter 11 case.  The Debtors' cash management system is similar to those commonly employed by corporate enterprises of a size and complexity comparable to the Debtors.  The widespread utilization of such systems and procedures are attributable to the numerous benefits that they provide.  Chief among the benefits are: (a) the ability to tightly control corporate funds, invest idle cash and ensure cash availability, (b) reduced administrative expenses through facilitation of funds movement and the development of more timely and accurate balance and presentment information.  Further, use of Business Forms without alteration or change and maintenance of existing accounts will prevent confusion, substantial disruption and delay.

Wages Motion

33.     As of January 1, 2020, the Debtors employed 72 full time and part time employees in various retail services, accounting, IT, customer service, management and

SGR/22808797.1

administrative positions.   COVID-19 has caused a complete cessation in the Debtors' retail operations while the Debtors' on-line business remains in operation.   As a result all of the 33 part time employees that were employed in the stores as of April 2020 were terminated and the 24 full time employees that were employed in the stores as of April 2020 were furloughed (collectively, the "Furloughed Employees").

34.    The Debtors hope to be in a position to return as many of their Furloughed Employees to work as possible. Based on information currently available, the Debtors hope that some of their Furloughed Employees will be able to return to work in early stages of the Chapter 11 Cases, subject to New York officials lifting restrictions.  In the short term, the Debtors have retained ten employees (the "Retained Employees") to maintain the Debtors' limited business operations during this global crisis.  Because the Debtors are hopeful that they will be in a position to return some of the Furloughed Employees to work once they fully re-operationalize, the relief sought by this Motion is with respect to both the Furloughed and Retained Employees, as well as certain employees that may be terminated notwithstanding the Debtors' best efforts (the "Terminated Employees," and collectively, the "Employees").

35.    It is my opinion that the continued service of the Employees is critical to the Debtors' ability to reorganize and the nature of the Debtors' business requires the business expertise and goodwill of its Employees to continue generating revenue.   Retention of the Employees is vital to the Debtors' ongoing operations.

36.    The Debtors pay the Employees every two weeks, one week in arrears, so that employees receive their pay every other Friday.   The Debtors completed payment of the payroll due May 29, 2020 prior to the Petition Date and therefore the amounts due for Employee Prepetition Compensation (as defined in the Wages Motion) as of the Petition Date, relating to

SGR/22808797.1

the services rendered within 180 days of the Petition Date, plus related taxes will be no greater than $25,000.   Based on my review of the records, I can confirm that no employee will be paid in excess of $13,650.00.

37.     The Debtors deduct certain amounts through payroll deductions from those Employees who elect to pay for health, vision and dental insurance and supplemental life and cancer insurance (the "Voluntary Benefit Contributions").  The Debtors are required to pay the gross amount of the monthly insurance premiums regardless of the amount contributed by the Employees.  The Debtors offer Employees health insurance products through Empire Blue Cross Blue Shield, dental insurance through Guardian Life Insurance Company and vision insurance through Empire Blue Cross Blue Shield Vision Rider (the "Benefit Providers").   These benefits are administered in-house by the Debtors.

38.     The Debtors arrange for Employees to have certain *optional flex benefit plans* for medical, dental and child care (the "Optional Flex Plan").   Contributions are made by the Employees through payroll deductions and are subsequently transferred by the Debtors to the Optional Flex Plan administrator (the "Optional Flex Plan Contributions").  The Debtors seek to pay up to an aggregate of $12,500 withheld from the Employees' wages to fund the Optional Flex Plan accounts (the "Unpaid Flex Contributions").  The Debtors seek authority to pay to the Optional Flex Plan administrator, in the ordinary course of business, the costs necessary for the Debtors to continue to offer the Optional Flex Plan benefits.  The Debtors are also requesting authority to continue withholding the Optional Flex Plan Contributions and to remit said amounts to the appropriate carrier in the ordinary course of business.

39.     Although the Debtors intend to retain as many of the Furloughed Employees and Retained Employees as possible, they anticipate that a portion of the employee workforce may

SGR/22808797.1

be terminated, including the store managers for each of their closing stores, and certain administrative staff. Prior to the Petition Date, the Debtors did not have a detailed severance program for Employees and based entitlement to severance in the Debtors' discretion on a case-by-case basis. The Debtors intend to pay a total of 2 weeks pay to each of the Employees that the Debtors do not intend to retain and to continue health insurance benefits for these individuals through June 30, 2020 (the "Severance Obligations"),

40.    The Severance Obligations arise in the ordinary course of the Debtors' business and their payment is necessary to sustain the morale of the retained Employees during these Chapter 11 Cases. The Debtors' estimate that the total Severance Obligations to be paid will not exceed $40,000. I agree with the Debtors belief that payment of the Severance Obligations is advisable—especially in light of the turmoil caused by the COVID-19 crisis.

41.    If the relief requested in the Wages Motion is not granted, the Employees will suffer great hardship and, in many instances, financial difficulties, since those monies are needed to enable them to meet their own personal obligations. If the payments are not made, the Debtors believe a number of the Employees will seek other employment and the Debtors will suffer immediate and irreparable harm. Unless the relief requested is granted, the Debtors may be deprived of the opportunity to reorganize. It is my opinion that it is in the best interests of the Debtors and their creditors that the Court authorize the payments described herein to avoid hardship to the Employees and also to maintain and preserve the viability of the Debtors' ongoing business.

Customer Program Motion

42.    The Debtors have three main programs aimed at keeping customers returning to their stores and buying their products. First, the Debtors' sell gift cards which are redeemable for purchases at a later date. Second, the Debtors have a refund and exchange policy which provides

customers refunds if the customer is not satisfied or otherwise wants to exchange products. Third, maintain the Sabon Royal Passport program which allows customers to earn loyalty points when they purchase products.

43.     The purpose of the Customer Satisfaction Programs is to ensure customer satisfaction and good-will for the Debtors. In order to maintain the goodwill of its customers, maintain its customer base and facilitate the chapter 11 cases, it is important that the Debtors continue the current Customer Satisfaction Programs including the issuance and honoring of gift cards, processing exchanges and returns, and continuing the Sabon Royal Passport program.

44.     The failure to honor existing customer obligations and the discontinuance of customer programs could jeopardize the success of the Debtors' chapter 11 cases as the loyalty of its customers would likely be adversely affected. The relative expense of continuing the program is outweighed by the benefits the Debtors will receive the Customer Satisfaction Programs are continued.

<u>Rejection Motion</u>

45.     The Debtors are parties to certain unexpired leases (the "<u>Leases</u>") governing premises (the "<u>Premises</u>") which were used by the Debtors as nine (9) retail stores. Pursuant to the Rejection Motion, the Debtors seek to (i) reject six of the unexpired leases (the "<u>Rejected Leases</u>"), and (ii) to abandon property no longer needed due to the closing of the stores related to the Rejected Leases.

46.     As a result of the Debtors' restructuring, the Rejected Leases have become unnecessary to the Debtors' estates. The Rejected Leases and Terminated Lease (as described in the Rejection Motion) have no value to their estates and, hence, are appropriate for rejection in order to relieve an undue burden on the Debtors' estates. In connection with the rejection of the Rejected Leases, the Debtors will surrender possession of the Premises to the Landlord for the

SGR/22808797.1

Rejected Leases as soon as practical after the Petition Date.  By rejecting the Rejected Leases at this time, the Debtors will avoid incurring unnecessary administrative charges that provide no tangible benefit to the Debtors' estates.  The resulting savings from the rejection of the Rejected Leases will increase the Debtors' future cash flow and assist the Debtors' reorganization efforts.

47.     The Debtors intend to remove inventory and certain of the furniture, fixtures and equipment and transport the assets to the Debtors' remaining retail locations and warehouse, but certain of these assets will be exceedingly difficult or expensive to remove or store (the "Remaining Property").  The Debtors estimate that the Remaining Property is of *de minimis* value; therefore, the Debtors will not realize any economic benefit by retaining the Remaining Property.  Accordingly, the Debtors request authority to abandon any Remaining Property at the Premises related to the Rejected Leases.  The Debtors expect to complete the store closings and remove the assets it intends to keep within 10-14 days of the filing of the bankruptcy case.

48.     The Rejected Leases are not necessary as a result of the discontinuation of the Debtors' operations at the locations affected and, hence, represent an undue burden on the Debtors.  Moreover, in the current retail environment, the Rejected Leases have no market value – *i.e.,* cannot be assigned to a third party for value.   Accordingly, rejection of the Rejected Leases represents an exercise of the Debtors' sound business judgment, is in the best interest of the Debtors' estates and creditors.

### DIP Financing Motion

49.     As stated, the Debtors have negotiated debtor in possession financing in the form of a senior secured Delayed Draw Term Loan in the maximum amount of $750,000.   The proposed DIP Lender is GRHUS and the terms are favorable with no upfront fees and an interest rate of Prime plus 4 percent.  The DIP financing will be secured by substantially all of the Debtors' assets.  It is my view that the Debtors could not find an alternative to GRHUS

considering the uncertainty of when its stores will be permitted to reopen and the state of the financing markets for retailers, which has been made even worse due the Covid-19 crisis.

50.      As shown in in the Budget attached as *Schedule 2* hereof, the Debtors must obtain interim financing in  the amount of $200,000 in order to meet their obligations and to effectuate an orderly continuation of their business operations Without the requested financing, the Debtors may be unable, among other things, to meet their respective payroll requirements, to pay necessary insurance premiums, such as health insurance and workers' compensation, and to fund other ongoing and essential capital needs and obligations.  Based upon the present value of the Debtors' assets, the Debtors believe that the best prospect for repayment to unsecured creditors will require maintaining the going concern value and continuing the Debtors operations

51.      The commencement of these chapter 11 cases will place increased demands on liquidity due to, among other things, the costs of administering these chapter 11 cases and the acceleration or elimination of trade terms. Accordingly, the Debtors will suffer immediate and irreparable harm if the requested relief is not granted.

## CONCLUSION

The foregoing account describes the Debtors' businesses and capital structure, the factors that precipitated the commencement of these Chapter 11 Cases, and the critical need for the Debtors to restructure their financial affairs and operations in chapter 11 which the Debtors will provide the best outcome for all stakeholders.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Boca Raton, Florida on May 29, 2020.

*/s/ Yale Scott Bogen*
Yale Scott Bogen

*Schedule 1*
*Top 20 Creditors*

SGR/22808797.1

# Creditors Holding 20 Largest Unsecured Claims
## Form 204

| Debtor | Creditor | Address | E-mail |
|--------|----------|---------|--------|
| SABON 1276 LEX, LLC | 1276 Lex Owner LLC | 560 Fifth Avenue, New York, NY 10036 | mstempel@hartrest.com |
| SABON 1276 LEX, LLC | Davidoff Hutcher & Citron LLP | 605 3rd Ave, New York, NY 10158 | sd@dhclegal.com |
| SABON 1276 LEX, LLC | Pest Away Exterminating | 45 Broadway 10th Fl, New York, NY 10006 | jeff@pestawayinc.com |
| SABON 1371 6TH AVE, LLC | DCA (NYC Consumer Affairs Dept.) | 42 Broadway #5 New York, NY 10004 | BCC@dca.nyc.gov. |
| SABON 1371 6TH AVE, LLC | MGI Designed Interiors Inc | 1819 Gilford Ave, New Hyde Park, NY 11040 | moshe@mgidesigned.com |
| SABON 1371 6TH AVE, LLC | Pest Away Exterminating | 45 Broadway 10th Fl, New York, NY 10006 | jeff@pestawayinc.com |
| SABON 1371 6TH AVE, LLC | The Claridge's Company, LLC | 101 West 55th Street, New York, NY 10019 | EDevine@mskkuhle.com |
| SABON 1450 BWY., LLC | 1450 Broadway, LLC | c/o The ZAR Group, LLC 1450 Broadway, Floor 17, New York, NY 10018 | avi.zukerman@zargroupny.com |
| SABON 1450 BWY., LLC | NYC Consumer Affairs Dept. | 42 Broadway #5 New York, NY 10004 | BCC@dca.nyc.gov. |
| SABON 1450 BWY., LLC | Pest Away Exterminating | 45 Broadway 10th Fl, New York, NY 10006 | jeff@pestawayinc.com |
| SABON 1450 BWY., LLC | Ultimate Signs and Designs Corp | 86 Sewell St, Hempstead, NY 11550 | info@ultimatesigns.com |
| SABON 2052 BWY., LLC | Consolidated Edison of New York, Inc. | Att: Law Department 4 Irving Place RM 1875 New York, NY 10003 | mooreed@coned.com |
| SABON 2052 BWY., LLC | Pest Away Exterminating | 45 Broadway 10th Fl, New York, NY 10006 | jeff@pestawayinc.com |
| SABON 2052 BWY., LLC | Sherwood 70 Associates | 745 Fifth Avenue, New York, NY 10151 | frosenberg@sherwoodequities.com |
| SABON 458 BWY, LLC | Grand Retail LLC | 358 Broadway, New York, NY 10013 | afshin@live.com |
| SABON 458 BWY, LLC | Pest Away Exterminating | 45 Broadway 10th Fl, New York, NY 10006 | jeff@pestawayinc.com |
| SABON 78 7TH AVE, LLC | Chelsmore Apts., LLC | 205 West 15th Street, New York, NY 10011 | nat@chelsmore.com |
| SABON 78 7TH AVE, LLC | Pest Away Exterminating | 45 Broadway 10th Fl, New York, NY 10006 | jeff@pestawayinc.com |
| SABON 78 7TH AVE, LLC | Verizon | P.O Box 15124, Albany, NY 12212 | craig_silliman@verizon.com |
| SABON 782 LEX, LLC | Pest Away Exterminating | 45 Broadway 10th Fl, New York, NY 10006 | jeff@pestawayinc.com |
| SABON 782 LEX, LLC | Sierra Realty Corp | c/o Sierra Real Estate, LLC 600 Madison Ave, New York, NY, 10022 | pbraus@lee-associates.com |
| SABON AMERICAN DREAM, LLC | None | None | N/A |

# Creditors Holding 20 Largest Unsecured Claims
## Form 204

| Debtor | Creditor | Address | E-mail |
|---|---|---|---|
| SABON MANAGEMENT, LLC | 458 Grand Broadway Owners Corp. | 458 Broadway # Corp, New York, NY 10013 | afshint@live.com |
| SABON MANAGEMENT, LLC | 584 Broadway, LLC | c/o The ZAR Group, LLC, 1450 Broadway, Floor 17, New York, NY 10018 | Steve Marvin: smarvin@olmsteadinc.com |
| SABON MANAGEMENT, LLC | Axella partners LLC | 185 Alewife Brook Parkway #210, Cambridge, MA | info@axellapartners.com |
| SABON MANAGEMENT, LLC | Mr. Locks, Inc. | 400 2nd Ave. New York, NY 10010 | info@mr-locks.com |
| SABON MANAGEMENT, LLC | Paycom Payroll, LLC | Attn: Holly Ely 7501 West Memorial Road, Oklahoma City, OK 73142 | investors@paycomonline.com |
| SABON MANAGEMENT, LLC | PDR, LLC (Packaging and Distribution Resources LLC) | 40 Saw Mill Pond Road, Edison, NJ 08817 | tsolano@pdrnj.com |
| SABON MANAGEMENT, LLC | Recycle Track Systems, Inc | 435 Hudson St Suite 404, New York, NY 10014 | jskall@rts.com |
| SABON MANAGEMENT, LLC | Sky Water | 8747 20th Avenue, Brooklyn, NY 11214 | help@skywatersystems.com |
| SABON MANAGEMENT, LLC | ULINE | Attn: Accounts Receivable 2200 S Lakeside Drive, Waukegan, IL 60085 | customer_service@uline.com |
| SABON MANAGEMENT, LLC | UPS | 28013 Network Place Chicago, Chicago, IL 60673 | nbrothers@ups.com |
| SABON MANAGEMENT, LLC | Velo Corporation Of America | D/B/A/ Quik Trak Messengers 267 W 17 Str. New York, NY 10011 | info@quik-trak.com |
| SABON RF, LLC | Crystal Clear Window Cleaning | 13000 Main Rd, Mattituck, NY 11952 | info@ccwindows.net |
| SABON RF, LLC | PSEGLI | 175 E Old Country Rd, Hicksville, NY 11801 | andrea.elderhowell@psegi.com |
| SABON RF, LLC | Terminix | 150 Peabody Place, Memphis, TN 38103 | terminixcares@terminix.com |
| SABON RF, LLC | The Retail Property Trust | c/o M.S. Management Associates Inc. 225 West Washington Street, Indianapolis IN 46204 | tharchar@simon.com |
| SABON RF, LLC | Town of Hempstead Dept. of Water | 1995 Prospect Ave. East Meadow, NY 11554 | kmurray@tohmail.org |
| SABON WEB, LLC | NYS Dept. of Taxation and Fin. | P. O. Box 5300, Albany, NY 12205 | Enid.Stuart@tag.ny.gov |
| SABON WEB, LLC | Tatiana Marmol | | |
| SOAPIA, INC. | None | None | N/A |
| SABON WILLIAMSBURG, LLC | A C H S Management Corp. | c/o ACHS Management Corp. 1412 Broadway, New York, NY 10018 | alex@achsny.com |
| SABON WILLIAMSBURG, LLC | Pest Away Exterminating | 45 Broadway 10th Fl, New York, NY 10006 | jeff@pestawayinc.com |

*Schedule 2*
*Budget*

SGR/22808797.1

# Sabon Holdings LLC and related debtors
## Debtor-in-Possession Budget
### Statement of Cash Sources and Uses

$000s

| | Total | | | | | | | Week of | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 6/1/2020 | 6/8/2020 | 6/15/2020 | 6/22/2020 | 6/29/2020 | 7/6/2020 | 7/13/2020 | 7/20/2020 | 7/27/2020 | 8/3/2020 | 8/10/2020 | 8/17/2020 | 8/24/2020 |
| **SOURCES OF CASH** | | | | | | | | | | | | | | |
| Sales - Retail | $160.7 | $0.0 | $0.0 | $0.0 | $0.0 | $13.5 | $15.0 | $15.6 | $15.6 | $15.6 | $17.4 | $22.0 | $22.0 | $22.0 |
| Sales - E-commerce | $661.3 | $60.7 | $60.7 | $60.7 | $60.7 | $57.4 | $56.1 | $56.1 | $56.1 | $56.1 | $50.5 | $36.6 | $36.6 | $32.8 |
| Sales - Wholesale | $664.8 | $38.5 | $38.5 | $38.5 | $38.5 | $61.8 | $71.1 | $71.1 | $71.1 | $63.1 | $43.1 | $43.1 | $43.1 | $43.1 |
| Sales returns and allowances | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Other sources | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Total Cash Inflows** | $1,506.9 | $99.2 | $99.2 | $99.2 | $99.2 | $112.7 | $129.2 | $142.8 | $142.8 | $142.8 | $131.1 | $101.7 | $101.7 | $97.9 |
| **USES OF CASH** | | | | | | | | | | | | | | |
| *Cost of Sales* | | | | | | | | | | | | | | |
| Inventory purchases | ($188.3) | $0.0 | $0.0 | ($20.0) | ($168.3) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Inbound freight | ($20.0) | ($10.0) | ($10.0) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| **Total Cost of Sales** | ($208.3) | ($10.0) | ($10.0) | ($20.0) | ($168.3) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| **Gross Profit (Cash Basis)** | $1,298.6 | $89.2 | $89.2 | $79.2 | ($69.1) | $112.7 | $129.2 | $142.8 | $142.8 | $142.8 | $131.1 | $101.7 | $101.7 | $97.9 |
| **Sales taxes** | ($37.5) | ($13.0) | $0.0 | $0.0 | $0.0 | ($13.0) | $0.0 | $0.0 | $0.0 | ($11.5) | $0.0 | $0.0 | $0.0 | $0.0 |
| ***Salaries*** | | | | | | | | | | | | | | |
| *Retail/E-commerce/Wholesale Expenses* | | | | | | | | | | | | | | |
| Salaries (taxes included) | ($343.8) | $0.0 | ($55.3) | $0.0 | ($55.3) | ($55.3) | ($46.3) | ($46.3) | ($46.3) | ($46.3) | ($50.3) | ($50.3) | ($50.3) | ($50.3) |
| Health insurance/benefits | ($19.5) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| **Ttl Center/Region Exp.** | ($363.3) | $0.0 | ($55.3) | ($55.3) | ($168.3)? | $0.0 | ($46.3) | ($46.3) | ($46.3) | ($46.3) | ($50.3) | ($50.3) | ($50.3) | $0.0 |
| Web advertising and marketing | ($151.3) | ($9.7) | ($34.3) | ($34.3) | $0.0 | ($14.4) | ($14.4) | ($4.5) | ($4.5) | ($14.4) | ($4.5) | ($30.0) | ($30.0) | ($9.4) |
| Web shipping expenses | ($189.4) | $0.0 | ($13.7) | ($13.7) | ($14.4) | ($14.0) | ($14.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) |
| Website expense | ($78.5) | $0.0 | ($31.5) | ($31.5) | $0.0 | ($23.5) | ($23.5) | $0.0 | $0.0 | ($23.5) | ($23.5) | $0.0 | $0.0 | ($10.0) |
| Retail advertising and marketing | ($5.1) | $0.0 | $0.0 | $0.0 | ($1.3) | ($1.7) | ($1.7) | $0.0 | ($1.7) | $0.0 | ($1.3) | ($1.7) | ($1.7) | $0.0 |
| Rent charges | ($168.1) | $0.0 | $0.0 | $0.0 | $0.0 | ($56.0) | $0.0 | $0.0 | $0.0 | ($56.0) | $0.0 | $0.0 | $0.0 | ($56.0) |
| Wholesale Prof fees and commission | ($12.0) | $0.0 | $0.0 | $0.0 | $0.0 | ($4.0) | $0.0 | ($4.0) | ($4.0) | ($4.0) | ($4.0) | $0.0 | $0.0 | $0.0 |
| Pick and Pack | ($100.2) | $0.0 | ($30.2) | $0.0 | $0.0 | $0.0 | ($40.0) | $0.0 | ($56.0) | ($56.0) | ($30.0) | $0.0 | ($56.0) | ($56.0) |
| Credit card fees | ($4.0) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Other retail expenses | ($10.5) | $0.0 | $0.0 | $0.0 | ($3.5) | ($3.5) | $0.0 | $0.0 | $0.0 | ($7.0) | $0.0 | $0.0 | $0.0 | $0.0 |
| **Ttl Center/Region Exp.** | ($715.2) | ($15.2) | ($128.6) | ($48.0) | ($51.9) | ($144.0) | ($115.5) | ($54.5) | ($41.7) | ($115.0) | ($44.5) | ($41.7) | ($100.0) | ($75.5) |
| ***Corporate Expenses*** | | | | | | | | | | | | | | |
| Accounting expenses | ($30.9) | ($1.8) | $0.0 | $0.0 | $0.0 | ($10.3) | $0.0 | $0.0 | $0.0 | ($10.3) | $0.0 | $0.0 | $0.0 | ($8.5) |
| Prof fees | ($2.0) | $0.0 | $0.0 | $0.0 | ($2.0) | ($2.0) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Computer expenses | ($31.5) | ($31.5) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Bank fees | ($3.9) | $0.0 | $0.0 | $0.0 | ($1.3) | $0.0 | $0.0 | ($1.3) | $0.0 | $0.0 | $0.0 | $0.0 | ($1.3) | ($1.3) |
| Travel/Meals & Enter. | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Equipment rental | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Advertising & marketing | ($7.5) | $0.0 | $0.0 | $0.0 | ($2.1) | ($2.1) | $0.0 | $0.0 | ($2.1) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Insurance | ($3.4) | $0.0 | $0.0 | $0.0 | ($1.4) | ($1.4) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | ($1.4) | $0.0 | $0.0 |
| Analytics | ($2.7) | $0.0 | $0.0 | $0.0 | ($2.0) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | ($2.0) |
| Supplies | ($4.0) | $0.0 | $0.0 | $0.0 | ($6.4) | ($6.4) | $0.0 | $0.0 | ($3.5) | ($3.5) | $0.0 | $0.0 | $0.0 | ($3.2) |
| Utilities | ($15.0) | $0.0 | $0.0 | $0.0 | ($0.1) | $0.0 | $0.0 | ($0.1) | $0.0 | $0.0 | ($0.1) | $0.0 | ($0.3) | $0.0 |
| Misc. expenses | ($3.1) | ($0.5) | $0.0 | $0.0 | ($0.5) | ($0.5) | ($0.5) | ($0.5) | $0.0 | $0.0 | ($0.5) | $0.0 | ($0.3) | $0.0 |
| **Total Corp. Expenses** | ($103.3) | ($28.9) | $0.0 | $0.0 | ($1.9) | ($30.6) | ($0.5) | ($1.9) | ($1.9) | ($24.4) | ($1.9) | ($1.3) | ($0.3) | ($11.7) |

**Sabon Holdings LLC and related debtors**
Debtor-in-Possession Budget
Statement of Cash Sources and Uses

$000s

| | Total | Week of | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | 6/1/2020 | 6/8/2020 | 6/15/2020 | 6/22/2020 | 6/29/2020 | 7/6/2020 | 7/13/2020 | 7/20/2020 | 7/27/2020 | 8/3/2020 | 8/10/2020 | 8/17/2020 | 8/24/2020 |
| **Other Income/Expenses** | | | | | | | | | | | | | | |
| Interest Income | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Interest (DIP) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Total Other Expenses** | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| | | | | | | | | | | | | | | |
| Total Operating Expenses | ($1,219.3) | ($170.6) | ($103.3) | ($18.0) | ($115.8) | ($159.1) | ($101.3) | ($43.6) | ($62.8) | ($150.9) | ($96.7) | ($43.0) | ($67.1) | ($87.1) |
| | | | | | | | | | | | | | | |
| **Net Operating Cash Flow** | $79.3 | ($81.5) | ($4.1) | ($87.1) | ($3.1) | ($29.9) | $41.5 | $99.2 | $60.0 | ($24.8) | $5.1 | $58.7 | $34.7 | $10.8 |
| | | | | | | | | | | | | | | |
| **Bankruptcy Expenses:** | | | | | | | | | | | | | | |
| Utility deposits | ($5.0) | $0.0 | $0.0 | ($5.0) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Legal Fees - DIP | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Legal Fees - Debtor | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Legal Fees - Creditors | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| CRO/Financial Advisor Fees | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Other Expenses | (10.0) | 0.0 | (10.0) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| US Trustee Fees | (15.0) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (15.0) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Total Bankruptcy Exp.** | ($30.0) | $0.0 | ($10.0) | ($5.0) | $0.0 | $0.0 | $0.0 | $0.0 | ($15.0) | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| | | | | | | | | | | | | | | |
| **Net Cash Flow** | $49.3 | ($81.5) | ($14.1) | ($92.1) | ($3.1) | ($29.9) | $41.5 | $99.2 | $45.0 | ($24.8) | $5.1 | $58.7 | $34.7 | $10.8 |
| | | | | | | | | | | | | | | |
| Beginning Available Cash Balance | $200.0 | $200.0 | $68.5 | $4.4 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| +Cash Generated from Ops | 49.3 | (81.5) | (14.1) | (92.1) | (3.1) | (29.9) | 41.5 | 99.2 | 45.0 | (24.8) | 5.1 | 58.7 | 34.7 | 10.8 |
| -Required Balance | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) | (50.0) |
| +Loan Needed | 400.7 | 0.0 | 0.0 | 137.7 | 190.9 | 270.8 | 279.3 | 230.1 | 235.1 | 309.9 | 354.8 | 346.1 | 361.4 | 400.7 |
| - Reserve for Repayment | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Ending Available Cash Balance | $199.3 | $68.5 | $4.4 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |